UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT ABATO,

    Plaintiff,

    -v-

NEW YORK CITY OFF-TRACK BETTING
CORP.,

    Defendant.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:                               │
│ DATE FILED:  JUN 0 7 2007            │
└─────────────────────────────────────┘
```

No. 03 Civ. 5849 (LTS)(HPB)

## OPINION AND ORDER

APPEARANCES:

OLSEN & BROWN
 By: John R. Olsen, Esq
150 Broadway, Suite 1115
New York, NY 10038

MICHAEL A. CARDOZO
CORPORATION COUNSEL OF THE CITY
OF NEW YORK
 By: David S. Levine, Esq.
    Eric Jay Eichenholtz, Esq.
    Gerard Schiano-Strain, Esq.
100 Church Street, Rm 2-123
New York, NY 10007

*Attorneys for Plaintiff*

*Attorneys for Defendant*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiff Vincent Abato ("Plaintiff" or "Abato"), a former employee of Defendant New York City Off-Track Betting Corp. ("Defendant" or "OTB"), alleges that OTB violated his Federal and State constitutional and statutory rights in connection with his involuntary demotion and termination, the denial of paid sick leave, and the denial of appeal hearings. Plaintiff brings Federal and State due process constitutional claims and federal statutory claims of sex, age, and disability discrimination and retaliation invoking, inter alia, 42 U.S.C. § 1983, Title VII of the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and the American With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213. The Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction of Plaintiff's state law claims.

Defendant moves for summary judgment dismissing Plaintiff's complaint in its entirety. The Court has considered thoroughly all of the parties' submissions and arguments in connection with the motion. For the following reasons, Defendant's motion is denied in part and granted in part.

### BACKGROUND

The following material facts are undisputed unless otherwise stated. On July 5, 1994, Plaintiff Vincent Abato ("Plaintiff" or "Abato"), a male over the age of 40 years, was employed by New York City Off-Tracking Betting Corp. ("OTB") as Director of Communication Systems. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶ 1; Pl.'s Rule 56.1 Stmt. and Def.'s Resp. ¶ 1.) Plaintiff was promoted thrice, first on or about August 1, 1995, then on or about October 28,

1996, and finally, on or about May 24, 1997. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶¶ 5-7.) In

May 1997, Plaintiff was promoted to Vice President of Information Technology with a raise in

salary. (Id. ¶ 7.) Plaintiff was subsequently demoted, on July 30, 2001, to Director of New

Business, with a salary reduction. (Id. ¶ 23.) There is a factual dispute as to whether Plaintiff's

demotion was the result of poor performance. (Id. ¶¶ 19, 26.) A female senior vice president

under the age of 40 took over Plaintiff's duties after the demotion. (Id. ¶ 27; Pl.'s Rule 56.1 and

Def.'s Resp. ¶¶ 85-86.) There is a dispute as to whether this person was initially hired and

thereafter given some of Plaintiff's responsibilities because of her employment qualifications or

because of an alleged social relationship with the then- President of OTB and his wife. (Def.'s

Rule 56.1 Stmt. and Pl.'s Resp. ¶ 27.) Plaintiff subsequently requested an appeal of his demotion

and a due process hearing. (Pl.'s Ex. 30.) It appears that no such appeal was considered, and no

such hearing took place. (Pl.'s Ex. 11 at 45.)

   In the fall of 2001, subsequent to his demotion, Plaintiff informed OTB that he

was disabled and requested extended sick leave. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶ 30.)

Plaintiff was granted paid medical leave of absence from October 12, 2001, through January 25,

2002. (Id. ¶¶ 39-40.) In a letter from Defendant dated December 27, 2001, Plaintiff was

instructed, in connection with his paid medical leave, "to provide . . . acceptable follow up

medical statements from [his] physician indicating the diagnosis, the dates of treatment,

prognosis of the disability and [his] anticipated return to work date." (Levine Decl., Ex. R) The

letter also provided that any further extension requests must be accompanied by updated medical

documentation prior to the approved period. (Id.) Similarly, in a letter from Defendant dated

January 4, 2002, Plaintiff was instructed that an extension of his medical leave must be submitted

in writing and include "an updated physician's statement . . . [which] must also emphasize if [he] will be able to return to full duty, upon the completion of [his] requested dates." (Id., Ex. S at 00488.)

       Plaintiff's last day at work was October 12, 2001. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶ 39.) On January 29, 2002, and April 12, 2002, Plaintiff was advised that his medical leave had expired and that he was to report to work. (Id. ¶ 42; Levine Decl. Exs. U, V.) He was placed on inactive pay status on January 25, 2002. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶ 43.) On January 30, 2002, February 15, 2002, and March 18, 2002, Plaintiff asked for extensions of paid medical leave. (Levine Decl. Exs. W,Y, Z.) On April 23, 2002, at OTB's request, Plaintiff was examined by a doctor, Eli Bryk, M.D., designated by Defendant. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶ 48.) Based on Dr. Bryk's conclusion that Plaintiff was fit for duty, OTB determined that Plaintiff's unpaid leave would end on June 28, 2002, and that he was to return to work on July 1, 2002. (Id. ¶ 50; Levine Decl. Ex. AA.) On June 7, 2002, Plaintiff attempted to appeal this decision, but OTB's general counsel advised him that there was no right to appeal. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp.¶¶ 51-52; Levine Decl. Ex. CC.)

       On June 24, 2002, Plaintiff again requested for an extension of paid sick leave until January 1, 2003, but this request was denied by OTB's general counsel for lack of specific medical documentation to support Plaintiff's return date. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶¶ 54-55; Levine Decl. Exs. EE-FF.)[1] In his letter denying the paid leave extension request, OTB's general counsel noted Dr. Bryk's determination that Plaintiff was fit to return to duty, and

---

[1]    The medical documentation Plaintiff had submitted gave no indication as to whether or when Plaintiff would be able to return to work. (See Pl.'s Ex. 19, at 15-16.)

the lack of medical documentation supporting Plaintiff's position that January 1, 2003, was the earliest date on which Plaintiff could anticipate returning to work. The letters concluded with a warning that, if Plaintiff failed to return to work as he had been instructed, he would be "at risk of disciplinary action being taken and/or being deemed to have abandoned [his] position." (Levine Decl., Ex. FF.)

On February 28, 2003, Plaintiff made another request for an extension of paid leave. (Pl.'s Ex. 17.) Medical documentation was attached to the request. (Id.) The attached physician reports, dated November 1, 2001, and February 26, 2003, indicated that Plaintiff was unable to work in any capacity relating to his job and that it was unclear whether he would be able to return to work in the future. (Id.)

Although he was not paid, Plaintiff's salary line remained on OTB's budget in 2002 and 2003. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶ 59.) On June 30, 2003, Plaintiff was informed that his employment with OTB was terminated. (Id. ¶ 61.) According to OTB, this termination was the result of the facts that Plaintiff had not worked for nearly two years and did not report to work after being directed to return, and that OTB was going through a period of reorganization and fiscal streamlining. (Id. ¶ 60.) On July 7, 2003, Plaintiff requested an appeal and full hearing regarding his termination. (Id. ¶ 63.) By letter dated July 10, 2003, OTB's general counsel indicated that, because the termination was not for disciplinary reasons, Plaintiff was not entitled to a hearing. (Id. ¶ 64.) Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on November 2, 2003. (Id. ¶ 65; Levine Decl. Ex. MM.) On February 4, 2004, the EEOC issued Plaintiff a right-to-sue letter. (Def.'s Rule 56.1 Stmt. and Pl.'s Resp. ¶ 67; Levine Decl. Ex. MM.)

The relevant official OTB documentation includes the OTB By-laws and the OTB Uniform Rules of Discipline ("Disciplinary Manual.") The OTB By-laws provide that the OTB President "shall be assisted by a salaried, full-time Executive Staff appointed by the [OTB] Board of Directors [(the "Board")] to serve at the will of the Board[]." (Pl.'s Ex. 3, at 10.) The Disciplinary Manual governs the conduct of OTB employees and promulgates certain procedures in connection with disciplinary actions. (Pl.'s Ex. 4.) The Disciplinary Manual applies to "collective bargaining employees, nonrepresented employees, and certain management employees." (Id. at Introduction page.) However, it further provides that "[m]anagement personnel employed at the level of Director and above are not subject to [the Disciplinary Manual] and serve at the discretion and pleasure of the President, subject of course to Due Process criteria." (Id.) Plaintiff also submits a declaration that provides that he was "told by the president of OTB that no adverse action could be taken against [him] without a vote of the Board of Directors" (Pl.'s Ex. 1, ¶ 7) as well the deposition of Robert D. Palumbo ("Palumbo"), a former Acting President of OTB, who states that, in his opinion, the President does not have authority to terminate a Vice President without Board approval. (See Pl.'s Ex. 5 at 13-14.)

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the

governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62,

69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The

Second Circuit has explained that the "party against whom summary judgment is sought . . .

'must do more than simply show that there is some metaphysical doubt as to the material facts. . .

. [T]he nonmoving party must come forward with specific facts showing that there is a genuine

issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)).

"[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for

a non-moving party to resist summary judgment.  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d

Cir. 1996).


*Timeliness of Statutory Discrimination Claims*

   Defendant argues that all of Plaintiff's statutory discrimination claims based on events

that occurred prior to January 6, 2003, are time barred.  Title VII, the ADA, and the ADEA all

require that a plaintiff file administrative charges with the EEOC no more than 300 days after the

alleged discriminatory act.  42 U.S.C. § 2000e-5(e); Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101 (2002); Tewksbury v. Ottaway Newspapers, 192 F.3d 322 (2d Cir. 1999).  The

undisputed evidence indicates that Plaintiff first filed charges with the EEOC no earlier than

November 2, 2003.  (See Levine Decl. Ex. MM.)  Thus, Plaintiff's claims based on alleged acts

of discrimination occurring more than 300 days prior to this date, or before January 6, 2003, are

time barred unless Plaintiff can demonstrate that the acts were part of a continuing violation,

such as a hostile work environment claim that is treated as a single "unlawful employment practice." Morgan, 536 U.S. at 117. Plaintiff's claims and factual proffers here, even when viewed in the light most favorable to him, cannot make out such a continuing violation. Rather, the claims are based on "[d]iscrete acts such as termination," with respect to which "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. An allegation of common motivation without some evidence of a discriminatory policy or scheme is insufficient to demonstrate that the violations were part of a continuous act of discrimination. "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Vergara v. Bentsen, 868 F. Supp. 581, 590 (S.D.N.Y. 1994) (internal quotations omitted). Plaintiff's statutory discrimination claims of unlawful demotion and alleged failures to grant additional sick leave requests prior to January 6, 2003, are thus time barred.

Accordingly, the Court grants Defendant's summary judgment motion with respect to all of Plaintiff's statutory discrimination claims that are based on incidents occurring prior to January 6, 2003, including claims of discrimination regarding Plaintiff's demotion and the denial of his additional sick leave requests. The only timely statutory discriminatory claims that remain involve Plaintiff's termination and the denial of his February 28, 2003, request for additional sick leave.[2]

---

[2]    There is no documentation indicating that Defendant specifically responded to Plaintiff's February 28, 2003, sick leave request. However, the Court construes the June 30, 2003, termination letter as a denial of the February 28, 2003, sick leave request for the purposes of this analysis.

*Merits of the Termination and February 28, 2003, Sick Leave Request Claims*

The Court construes Plaintiff's First Amended Complaint as alleging that Plaintiff was denied an extension of paid sick leave, and that his employment was terminated, due to OTB's animus against him on the basis of his gender, age, or disability, or in retaliation for his complaints that his earlier demotion and other employment decisions adverse to him were the products of prohibited discrimination. Disparate treatment claims brought under Title VII, the ADEA, and the ADA are analyzed under the three-step burden shifting analysis established in McDonnell Douglas Corp. v Green, 411 U.S. 792, 802 (1973). See also Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (applying burden shifting analysis to ADEA cases); Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999) (applying burden shifting analysis to ADA cases).

In the context of a motion for summary judgment, a plaintiff must first proffer evidence sufficient to establish a prima facie case of prohibited discrimination. McDonnell Douglas Corp., 411 U.S. at 802. The burden of establishing a prima facie case in employment discrimination cases is minimal. McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Once a plaintiff has made out a prima facie case, the burden shifts to the employer to offer some legitimate, nondiscriminatory rationale for its actions. McDonnell Douglas Corp., 411 U.S. at 802. An employer sustains its burden "by producing any evidence of nondiscriminatory reasons, whether ultimately persuasive or not." Weeks v. N.Y. State Div. of Parole, No. 00 Civ. 5865 SJ, 2002 WL 32096593, at *4 (E.D.N.Y. Nov. 25, 2002) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). "The employer need not prove by a preponderance of the evidence that the reasons for his actions were not discriminatory, but may simply present clear and specific

reasons for the action." Gibbs v. Consol. Edison Co. of N.Y., Inc., 714 F. Supp. 85, 89

(S.D.N.Y. 1989) (internal quotations omitted). If the employer meets its burden, the plaintiff is

required to show that the defendant's stated reason is a pretext for the prohibited discrimination.

Schnabel, 232 F.3d at 88.

      Plaintiff has failed to proffer a prima facie claim of gender, age or disability

discrimination with respect to the treatment of his February 2003 paid sick leave request or his

termination. To establish a prima facie case of gender or age discrimination, Plaintiff must show

that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an

adverse employment action; and (4) the circumstances surrounding the adverse employment

action give rise to an inference of discrimination.     McDonnell Douglas Corp., 411 U.S. at 802;

Schnabel, 232 F.3d at 87. His prima facie case fails with respect to the qualification prong of his

paid sick leave claim because he has not demonstrated that he complied with the condition

repeatedly articulated by OTB – that he provide medical documentation of anticipated ability to

return to work. Plaintiff's physicians consistently declined to offer any prognosis as to his ability

to return to work. Plaintiff proffers no evidence that any similarly situated younger or female

employees were granted extended paid leave under such circumstances or that OTB policy

provided for indefinite paid leaves.

      Plaintiff's prima facie case is similarly lacking as to his termination (i.e., the

elimination of his job title and salary line). Plaintiff and his doctors maintained at the time (some

20 or more months after Plaintiff had last worked) that he was unable to work at all. Plaintiff's

conclusory assertions in his affidavit that unpaid and long term medical leaves had been granted

to others by OTB (see Pl.'s Dec., ¶ 19) are insufficient to meet this element of his prima facie

case.

Similarly, Plaintiff has failed to proffer a prima facie claim of disability

discrimination with respect to these adverse employment actions. To establish a prima facie case

of disability discrimination, Plaintiff must show that "his employer is subject to the ADA; (2) he

was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the

essential functions of his job, with or without reasonable accommodation; and (4) he suffered

adverse employment action because of his disability." Heyman v. Queens Vill. Comm. for

Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).

Plaintiff fails to proffer evidence that he was a qualified individual with a disability, in that his

medical documentation (see Pl.'s Exs. 17 at 0098, 19), statements in communications with OTB

concerning leave requests (see Levine Decl. Exs. W, Y-Z, EE, GG; Pl.'s Ex. 17), statements in

his deposition (see Pl.'s Ex. 2 at 105-106, 278-79, 409-41) and motion submissions (see Pl.'s

Opp'n, 1-2, 15-17) represent that he was unable to work at all and thus was by definition unable

to perform the essential functions of the position from which he was terminated. See Mescall v.

Marra, 49 F. Supp. 2d 365, 375 (S.D.N.Y. 1991) (collecting cases) (attending work on a regular

basis is an essential function of a job).[3]  Nor has Plaintiff submitted any specific factual

[3]     Plaintiff has not raised a triable issue of fact as to whether his request for flex-time or an ergonomically correct chair would have been a reasonable accommodation. The evidence indicates that Plaintiff only requested each of these accommodations once; he requested flex-time on August 7, 2001, and an ergonomically correct chair in July or August of 2001. (Def.'s Rule 56.1 and Pl.'s Resp. ¶¶ 31-32; Levine Decl. Ex. P; Pl.'s Ex. 2 at 223, 225.) Furthermore, Plaintiff has not provided evidence, except his own assertions (see Pl.'s Ex. 2 at 393-94, 223, 225-26), that a flexible start time or an ergonomically correct chair would have accommodated his disability. In fact, Plaintiff's post-2002 correspondence with OTB prior to his termination, including the physician recommendations that he submitted, indicated that he was unable to work at all. (See Levine Decl. Exs. W, Y-Z, EE, GG; Pl.'s Ex. 17.) Furthermore, any

information indicating that there were similarly situated non-disabled employees who were not terminated or denied paid sick leave extension requests.

For purposes of the Court's further analysis of these claims, the Court assumes, however, that Plaintiff's prima facie case has been tendered, and that Plaintiff has also carried his minimal burden in making the requisite proffer of a prima facie retaliation case: "participation in a protected activity known to the defendant; . . . an employment action disadvantaging the plaintiff; and . . . a causal connection between the protected activity and the adverse employment action." Donato v. Plainview-Old Bethpage Central School District, 96 F.3d 623, 633-34 (2d Cir. 1996) (citations and internal quotation marks omitted). Once a prima facie case has been made out, the burden shifts to the defendant to come forward with some nondiscriminatory reason for the adverse employment action. Here, Defendant proffers testimonial and documentary evidence of OTB's restructuring and clearing of unused lines from the budget (Def.'s Rule 56.1 Stmt. ¶ 60; Levine Decl. Exs. L at 46-47, II), the fact that Plaintiff neither worked nor indicated an ability to work for more than a year and a half (Pl.'s Ex. 2 at 105-106; Levine Decl. Exs. HH at 17-20, 32-33; W,Y-Z, EE, GG), a medical examination that found Plaintiff was able to work (Levine Decl. Ex. AA), Plaintiff's failure to return to work in response to specific notices to do so (id. Exs., U-V, CC-DD, FF), and his failure to provide medical documentation as to when he would be able to return to work (Id., Exs. S,U,V.) This evidence is sufficient to rebut prima facie charges of discrimination and retaliation.

Plaintiff has failed to come forward with evidence demonstrating that the reasons

---

discrimination claim based on failure to provide such accommodations is at best untimely and unexhausted. The record contains no indication that Plaintiff filed any EEOC complaint about the failure to provide the accommodations.

proffered by Defendant are a pretext for discrimination or retaliation. In conclusory fashion and without proffering any specific information as to persons purportedly treated differently, Plaintiff asserts that OTB did not take into account his medical documentation (Pl.'s Opp'n to Def.'s Mot. for Summ J., at 2; Pl.'s Rule 56.1 Stmt. ¶¶ 186-87) and that similarly situated younger women with no health issues were treated differently. (Pl.'s Rule 56.1 Stmt. ¶¶ 132-34, 216.) At the summary judgment stage, such vague and conclusory assertions are insufficient to present a genuine issue of material fact as to whether the proffered reasons are a pretext for age, gender, disability discrimination or retaliation. Cf. Cifarelli v. Vill. of Babylon, 93 F.3d 147, 51 (2d cir. 1996).

*Section 1983 First Amendment Retaliation Claim*

Defendant argues that Plaintiff has not proffered sufficient evidence to establish a First Amendment retaliation claim. Claims of prohibited retaliation for the exercise of free speech rights are also evaluated under a burden-shifting standard. Plaintiff must first proffer sufficient evidence to make out a prima facie case. "[W]here the plaintiff is a public employee alleging that he suffered an adverse employment action as retaliation for the exercise of his First Amendment rights, . . . a plaintiff must initially show that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest, . . . (2) he or she suffered an adverse employment action, . . . and (3) the speech was at least a substantial part or motivating factor in the [adverse employment action.]." Zelnik v. Fashion Institute of Technology, 464 F.3d 217, 225 (2d Cir. 2006) (citation omitted). If Plaintiff proffers a prima facie case, Defendant must, in response,

(1) demonstrate by a preponderance of the evidence that it would have taken the same adverse action regardless of the protected speech, or (2) show that the plaintiff's expression was likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression . . . . The latter balancing rationale is commonly known as the 'Pickering balancing test' . . . .

Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004) (internal citations omitted).

Plaintiff has not proffered sufficient evidence to establish a prima facie claim of First Amendment retaliation. In his deposition, Plaintiff testified that he complained to certain OTB officials that he had been discriminated against. (See Levine Decl. Ex. B at 229; Pl.'s Ex. 2 at 212-13). For the first time in response to this motion, however, he claims that he also complained to OTB's inspector general that the appointment of the woman who ultimately assumed his job duties was "an abuse of public authority and of OTB's responsibility to the public." (Pl.'s Ex. 1 ¶ 41). In the same declaration, he says he complained to OTB's inspector general because he "believed [he] was obligated to do so" and that "[w]e had always been instructed that we had an open door to complain to the inspector general." (Id.)

Plaintiff's complaints as to which he testified in his deposition (i.e. about being discriminated against) are clearly personal and not ones made as a citizen on matters of public concern. They are, thus, insufficient to state a prima facie First Amendment retaliation claim. Furthermore, Plaintiff cannot create an issue of material fact by contradicting his deposition testimony with a later affidavit in opposition to a summary judgment motion. See Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996) (finding that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony"). In any case, Plaintiff's assertion about his complaints to OTB's inspector general are also insufficient to

support a rational factfinder's determination that he made a complaint as a citizen about a matter of public concern because, by Plaintiff's own account, he felt an obligation to make such a complaint as an employee. See Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006) (finding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline).

   Even assuming Plaintiff can make a prima facie case for the purpose of this analysis, Defendant has proffered sufficient evidence to show that it would have taken the same adverse action regardless of the protected speech. Defendant proffers that Plaintiff was demoted because of his poor performance (see Levine Decl. Ex. H at 18, 25, 28-29, 42), was denied extended sick leave because of its physician's examination of Plaintiff (see id. Exs. AA, CC, GG, FF) and Plaintiff's failure to provide medical evidence in support of his assertion that he would be able to return to work at the conclusion of the requested paid leave (id., Exs. S,U,V), and that Plaintiff was terminated because of budgetary and restructuring consideration and Plaintiff's absence from work (see id. Exs. HH at 18-20, JJ). The Court therefore finds that no rational jury could conclude that OTB's evidence is insufficient to demonstrate that it would have demoted Plaintiff, denied him sick leave, and terminated him regardless of the protected speech. Accordingly, the Court grants Defendant's motion for summary judgment pertaining to Plaintiff's First Amendment retaliation claims.[4]

---

[4] Plaintiff has denominated his federal constitutional claims as counts separate from his Count III claim pursuant to 42 U.S.C. § 1983. Because section 1983 is the proper procedural vehicle for asserting claims of constitutional violations under color of state law, the dismissal of the federal element of Plaintiff's First Amendment claim (Count VI) also constitutes dismissal of the corresponding element of Plaintiff's section 1983 claim.

*Section 1983- Due Process Rights- "Liberty Interest" Claim*

In Count II of the First Amended Complaint, Plaintiff asserts a claim for "deprivation of liberty interest due process." (Compl. ¶ 33.)  In light of Plaintiff's allegations that OTB injured his reputation in connection with his termination, the Court construes Count II as a "stigma-plus" claim that he was deprived of his liberty interest in his reputation without due process.  See Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005). Claims asserting such a deprivation of a liberty interest require a plaintiff to allege "(1) the utterance of a statement about [him or] her that is injurious to [his or] her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement."  Id. (internal quotations omitted).  "Stigmatizing statements by the government about an employee upon her discharge only implicate a liberty interest when there is also public disclosure."  Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 631 (2d Cir. 1996) (internal quotations and citations omitted); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n.13 (1985).

Plaintiff's evidence of discharge-related stigmatizing statements consists solely of assertions in his affidavit that word of his termination by OTB spread quickly and that queries from his acquaintances suggested that OTB must somehow have spread news of his firings and that he had done "something wrong to warrant it." (Pl.'s Ex. 1 ¶ 42.)  Plaintiff provides no evidence of what was said, who said it, or evidence from any third parties that they were told anything in connection with his termination.  Plaintiff's vague and conclusory proffers are insufficient to support a rational factfinder's determination that he was deprived of his liberty interest in his reputation with regard to his termination.  See Donato, 96 F.3d at 630-31 (finding

that stigmatizing statements regarding professional incompetence must "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.") Accordingly, the Court grants Defendant's summary judgment motion in so far as it seeks dismissal of Plaintiff's liberty interest claim.[5]

*Section 1983-Due Process Rights-"Property Rights" Claim*

Plaintiff asserts that he had a right to a hearing before the Board of Directors as to all adverse actions following his appointment as a Vice President of OTB and that OTB's failure to provide such hearings and to accede to his requests for "appeals" and "due process" hearings with respect to his demotion and the other adverse actions that followed his demotion constituted violations of his rights to due process under the 14th Amendment to the Constitution. To state such a constitutional claim, a plaintiff must show a constitutionally-recognized property interest and a deprivation of that interest without due process of law. Murray v. Bd. of Educ. of the City of New York, 984 F. Supp. 169, 183 (S.D.N.Y. 1997). "Property interests . . . are not created by the Constitution." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). These interests "are defined by existing rules or understandings . . . that secure certain benefits and that support claims of entitlement to those benefits." Id. This includes "such rules or mutually explicit understandings that support [a] claim of entitlement to the benefit." Perry v. Sindermann, 408 U.S. 593, 601 (1972).

There are genuine issues of material fact as to whether Plaintiff had a right to

---

[5]     This ruling also constitutes a dismissal of the corresponding element of Plaintiff's section 1983 claim (Count III). See supra n. 4.

maintain his position and perquisites as Vice President unless the Board acted to remove him or change the terms of his employment, and as to whether Plaintiff had a right to full-blown "due process" hearings and appeals with respect to any of the adverse actions that were taken. As noted earlier, OTB bylaws provide that members of the "Executive Staff" serve at the will of the Board; the bylaws do not define the term "Executive Staff." Plaintiff offers his own declaration that the President told him "that no adverse action could be taken against [him] without a vote of the Board of Directors" and that Palumbo "reinforced" this belief while Palumbo was President of OTB. (Pl.'s Ex. 1, ¶¶ 7-8.) Plaintiff also proffers the deposition of Palumbo, who states that, in his opinion, the President does not have authority to terminate a Vice President without Board approval. (See Pl.'s, Ex. 5 at 13-14.)

The evidentiary record also includes a Disciplinary Manual that by its terms does not apply to persons in the position of "Director or above," who "serve at the discretion and pleasure of the President, subject of course to Due Process criteria." (Pl.'s Ex. 4 at Introduction page.) OTB's counsel nonetheless cited specific provisions of the Disciplinary Manual in denying Plaintiff's requests for appeals or due process hearings. (See Levine Decl., Exs. CC, LL.) OTB's memorandum informing Plaintiff that he was being demoted from the Vice President position asserted that he served at the pleasure of the President. (See id., Ex. N at 00256.)

The nature and extent of any due process rights or protections Plaintiff may have had in connection with adverse changes to the terms of his employment cannot be resolved on this record. Accordingly, Defendant's summary judgment motion is denied as to Plaintiff's procedural due process claim.

18

*N.Y. C.P.L.R. Article 78 Claims and Miscellaneous State Claims*

Defendant argues that Plaintiff's Article 78 Claim (Count V) should be dismissed for lack of subject matter jurisdiction. The Court agrees. A proceeding under Article 78 is required to be brought in New York State court. See N.Y. C.P.L.R. § 7804(b) (McKinney 1994) ("A proceeding under this article shall be brought in the supreme court in the county specified . . ."). A federal district court therefore does not have subject matter jurisdiction to hear such a claim. See Blatch v. Hernandez, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) ("The [Article 78 claim] must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims."). Even if the Court has supplemental jurisdiction of the Article 78 claim pursuant to 28 U.S.C. section 1367, it declines to exercise such jurisdiction for the reasons expressed in Camacho v. Brandon, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999) (declining to hear an Article 78 claim pursuant to pendent jurisdiction because the matter was a purely state procedural remedy that should be litigated in state court). The Court rejects Plaintiff's argument that, pursuant to Federal Rule of Civil Procedure 8(d), Defendant's failure to dispute the jurisdiction of the Article 78 claim or otherwise defend against it in the answer created federal subject matter jurisdiction over this claim. Nothing in Rule 8 creates subject matter jurisdiction of a claim simply because a party does not explicitly contest the Court's jurisdiction of the claim or otherwise defend against it in a responsive pleading. See Fed. R. Civ. P. 8. The Court also finds unpersuasive Plaintiff's equitable argument in connection with the statute of limitations for an Article 78 proceeding.

Plaintiff argues that, because he brought this action in federal court rather than state court, it would be unfair at this point to deny subject matter jurisdiction given the statute of limitations period. While an Article 78 claim must be commenced within four months of the adverse determination (see N.Y. C.P.L.R. § 217 (McKinney 2003)), section 1367 provides a

tolling period for claims brought in federal court pursuant to supplemental jurisdiction but ultimately dismissed prior to trial. See 28 U.S.C. § 1367(d).

Defendant also seeks dismissal of Plaintiff's state constitutional claims in Counts IV and VI[6] on the grounds that Plaintiff has failed to satisfy certain state notice and pleading requirements.[7] Under New York's Racing, Pari-Mutuel Wagering and Breeding Law, "[i]n every action against the [New York City Off-Track Betting Corp.] for damages . . . for personal injuries, the complaint shall contain an allegation that at least thirty days have elapsed since notice of claim was presented to the corporation and that the corporation has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment. The notice of claim shall be in writing . . . and shall set forth . . . [t]he nature of the claim . . . [t]he time when, the place where and the manner in which the claim arose; and . . . [t]he items of damage or injuries claimed to have been sustained so far as then practicable to determine." N.Y. RAC PARI-M § 618 (1) and (2) (McKinney 1999); see DiPalto v. N.Y. City Off Tracking Betting Corp., 1998 WL 276180, at *2 (S.D.N.Y., May 28, 1998) (noting that New York State constitutional claims against OTB must satisfy procedural requirements under section 618)

Plaintiff's complaint fails to plead the timely presentment of a formal notice of claim. Moreover, Defendant's proffered evidence indicates that, while a notice of claim was filed, it did not address any events occurring after September 17, 2001. Because it is undisputed that Plaintiff failed to serve any formal notice of claim relating to post-September 17, 2001, events (i.e. regarding sick leave requests made after that date and termination) and that he has

---

[6]     The federal aspect of Count VI is dismissed on its merits. See supra "Section 1983 First Amendment Retaliation Claim."

[7]     Because all the federal claims have not been dismissed, the Court retains supplemental jurisdiction of Plaintiff's state claims.

failed entirely to plead in his complaint the notice of claim as required by law, Defendant's

motion for summary judgment is granted as to the state law aspects of Counts IV and VI.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted

as to all of Plaintiff's claims except the federal First Amendment due process aspects of his

claims asserted in Counts I and II.

A final pre-trial conference will be held in this case on October 12, 2007, at

10:30 a.m. The parties are directed to meet promptly with Judge Pitman for settlement purposes

and comply with the provisions of the undersigned's April 7, 2004, Pre-Trial Scheduling Order in

anticipation of the final pre-trial conference.

SO ORDERED.

Dated: New York, New York
June **7**, 2007

LAURA TAYLOR SWAIN
United States District Judge

Copies mailed 6/7/07